FILED

JUL 23 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JC RESORTS, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 19-cv-00665-BEN-NLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 13] |

Before the Court is Defendant JC Resorts, LLC's ("Defendant") Motion for Summary Judgment, filed on February 28, 2020. (Doc. No. 13.) Plaintiff James Rutherford ("Plaintiff") filed his Response in opposition on March 16, 2019. (Doc. No. 14.) Defendant filed its Reply on March 23, 2019. (Doc. No. 16.) Having reviewed the party's submissions, the Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78 and Civil LR 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

///
///
///
///

1

# I. BACKGROUND

## A. Factual Background

Plaintiff James Rutherford, through counsel, brings claims for violation of the California Unruh Civil Rights Act and Americans with Disabilities Act[1] ("ADA"). (*See* Doc. No. 1-1 ¶ 14.) Plaintiff's claims stem from an alleged desire to stay at the Rancho Bernardo Inn (the "Inn") in San Diego, California.[2] Plaintiff alleges that he is a disabled individual who relies on manually powered mobility devices, such as a cane, a Rollator walker, or a wheelchair to ambulate at times.[3] *Id.* He asserts that he frequently travels with his fiancé, who is quadriplegic, for both business and pleasure.[4] As a result, public accommodation establishments that he and/or they patronize, must be equipped with ADA compliant mobility accessible features. Aside from his personal necessity for access to public accommodation features, Plaintiff also asserts that he is an ADA compliance "tester" for the purpose of determining whether places of public accommodation are in compliance with ADA guidelines.[5]

---

[1] His disabilities substantially limit his performance of "one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects." (See Doc. No. 1-1 ¶ 14.)

[2] The Defendant owns and operates the Rancho Bernardo Inn in San Diego, California.

[3] Plaintiff suffers from spinal stenosis aggravated by a herniated disc, arthritis in his hands and damage to his heels from a previous fracture. (Doc. No. 15 at 8.)

[4] The Court notes that Plaintiff's fiancé is not a party to this action. Plaintiff has no standing to raise any claims his fiancé might; his rights are limited to the right to stay at the motel with his fiancé. His fiancé's disability is therefore relevant, but only to his own claim. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) (holding that Article III standing requirements mean an ADA plaintiff must show that "injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties").

[5] The standards governing compliance with the ADA are set forth in the ADA Accessibility Guidelines ("ADAAG"), with is "essentially an encyclopedia of design standards." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). The ADAAG "lay[s] out the technical structural requirements of places of public

2

1    Plaintiff contends that on January 10, 2019, he visited the Inn's website to book a
2 room for his fiancé and himself.[6] *Id.* After searching the website, Plaintiff claims he was
3 unable to determine if the property was equipped with the necessary accessibility features
4 that he and his fiancé require.[7] *Id.* Moreover, Plaintiff asserts the website's reservation
5 system did not allow accessible room reservations to be made in the same manner as
6 standard room reservations.[8] *Id.* ¶ 10. As a result of these barriers, he was unable to
7 reserve a room at the Inn. *Id.* ¶¶ 27-37. Based on these allegations, Plaintiff brings two
8 causes of action: an ADA claim arising out of the alleged discrimination he suffered from
9 the absence of or differences in online accessibility information and room reservation
10 requirements, and a California Unruh Civil Rights Act claim incorporating the same facts
11 and pleadings as the ADA claim. Plaintiff seeks: (1) injunctive relief, compelling
12 Defendant to comply with the ADA and Unruh Act; (2) damages (*nominal* and *statutory*),
13 (3) attorney's fees and costs, and (4) post-judgment interest. Defendant moves this Court
14 for an Order granting its Motion for Summary Judgment on both of Plaintiff's claims.
15 (Doc. No. 13 at 3.)

---

accommodation." *Fortune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004).

[6] Plaintiff alleged that he attempted to use Defendant's Website to book an accessible room at Defendant's hotel, find information about accessible features about an accessible room and the hotel, but was deterred from using the website and visiting Defendant's physical locations due to the lack of accessibility of Defendant's online reservations system. (Doc. No. 14 at 4.)

[7] Barriers that directly affect Plaintiff at a hotel include a lack of accessible routes to and from entrances, accessible routes inside facilities, accessible parking, accessible bathing facilities, handrails and support, accessible pools, accessible elevators, wide enough doorways, and accessible service counters. In addition to being dangerous for him because of the danger of falling, these types of barriers also affect his ability to use either a cane, rollator, or wheelchair to gain access. (Doc. No. 14 at 8.)

[8] "[T]he website and online reservation system prevented me [sic] make a reservation for a room designated as 'accessible' (regardless of inadequate descriptions of how a room is accessible) because it required an extra step to make a 'special request' before I could make a reservation." (Doc. No. 14-1 ¶ 11.)

3

**B. Procedural Background**

This case was brought on February 27, 2019, by Plaintiff in the San Diego Superior Court.[9] (*See* Doc. No. 1-1.) The Complaint was removed to this Court on April 9, 2019. (*See* Doc. No. 1.) Defendant filed its Answer on April 10, 2019. (Doc. No. 2.) On February 28, 2020, Defendant filed its Motion for Summary Judgment. Plaintiff filed his Response on March 16, 2019, and Defendant filed its Reply on March 23, 2019. (*See* Doc. Nos. 14, 16.)

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though a court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material

---

[9] San Diego Superior Court Complaint, Case Number 37-2019-0001-939-CU-CR-CTL.

4

issue of fact precludes summary judgment. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Thus, "what suffices at the Rule 12(b)(6) stage may not suffice at the later stages of the proceedings when the facts are tested." *Syed v. M-I*, 853 F.3d 492, n.4 (9th Cir. 2017). Thus, a court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. This Court is at that later stage now.

### III. DISCUSSION

As a threshold matter, Defendant has challenged Plaintiff's standing to sue. Specifically, Defendant argues the entire ADA claim fails as a matter of law because Plaintiff's Complaint does not sufficiently allege that he was "deterred from" or "would ever visit the Inn in the future." (Doc. No. 13 at 3.) Next, Plaintiff failed to plead sufficient facts to state a claim under the ADA. *Id.* Moreover, Plaintiff is not entitled to statutory damages because he cannot show he was denied access to the Inn or that Defendant intentionally discriminated against him. Finally, Defendant asserts that the Court should decline to exercise supplemental jurisdiction over the state law claim. *See id.* at 3. The Court addresses the threshold issue of standing first.

### A. Article III Standing

"[A]s with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted). "In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must

demonstrate a 'real and immediate threat of repeated injury' in the future." *Id.* (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

To have standing, a plaintiff must establish three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.'" *Id.* at 561 (citation omitted). The burden falls on the plaintiff to show that it has met all three requirements. *Id.*

Federal courts "to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (internal quotations omitted); *see also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972); 42 U.S.C. 12188(a) (providing private right of action for injunctive relief against public accommodations that violate the ADA). Accordingly, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III ...." *Doran*, 524 F.3d at 1042 n.5.

**1. *Website***

(a) Actual or Imminent Injury

In the context of ADA discrimination claims, the Ninth Circuit recognizes a deterrent effect doctrine. *See, e.g., Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th

6

Cir. 2008). A disabled individual has suffered an actual injury if he is "currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA...." *Id.* at 1040. In this case, Plaintiff's "knowledge" that the Inn is not ADA or state law compliant comes entirely from his review of Defendant's website. Evidence of the plaintiff's "actual knowledge" of a barrier is sufficient to demonstrate an actual injury. Moreover, "[w]here an individual knows of ADA violations at a public accommodation, he is not required to keep returning in order to show imminent injury." *Gastelum v. Canyon Hospitality LLC*, No. 17-CV-2792-PHX-GMS, 2018 WL 2388047, at *6 (D. Ariz. May 25, 2018). Instead, the ongoing deterrence is sufficient to satisfy the requirement of an actual and imminent injury. *Doran*, 524 F.3d at 1040. Here, it is undisputed that Plaintiff gained actual knowledge of the alleged barriers.

Defendant argues, however, that Plaintiff cannot demonstrate an actual injury because his sole motivation for acquiring that knowledge was to initiate a lawsuit. (Doc. No. 13.) This argument, however, is inconsistent with prevailing Ninth Circuit law, which maintains that "motivation is irrelevant to the question of standing under Title III of the ADA." *See Civil Rights Educ. And Enforcement Ctr. v. Hospitality Props. Tr.*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) (hereinafter "*CREEC*"); *Gastelum*, 2018 WL 2388047, at *6 ("This so-called 'tester standing' rule means that a plaintiff can visit or otherwise obtain information about a public accommodation solely for the purpose of ensuring ADA compliance and with the intent to bring a lawsuit if deficiencies are found."). Accordingly, Plaintiff's knowledge of alleged barriers is sufficient evidence of an actual and imminent injury.

(b) Concrete and Particularized Harm

A plaintiff may show a concrete and particularized injury by "stating that he is currently deterred from attempting to gain access" to the public accommodation due to a barrier. *Doran*, 524 F.3d at 1040. A barrier in a public accommodation must "interfere with the plaintiff's full and equal enjoyment of the facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). A barrier, however, "only amounts to such

interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Id.* A "bare procedural violation" unassociated with a plaintiff's particular disability "cannot satisfy the demands of Article III" standing. *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1550 (2016).

For example, in *Chapman*, the plaintiff alleged "that he is 'physically disabled,' and that he 'visited the Store' and 'encountered architectural barriers that denied him full and equal access.'" *Chapman*, 631 F.3d at 954. The plaintiff, however, "simply identifie[d] alleged ADA … violations without connecting the alleged violations to [his] disability or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the Store." *Id.* As a result, the Ninth Circuit found these allegations insufficient to establish a concrete and particularized harm for purposes of the injury-in-fact requirement.

Likewise, Plaintiff's failure to connect the alleged ADA violations from the website and reservation system to his specific disability is fatal to his ability to show a concrete and particularized harm. More importantly, since this is a motion for summary judgment, Plaintiff must present evidence of harm to support his claim of Article III standing.[10] Here, Plaintiff alleges that the Inn's website violates 28 C.F.R. 36.302(e)(1), requiring facilities to "identify and describe accessible features … in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." (Doc. No. 1-2 ¶¶ 22-32.) In this case, he did not state what accessibility feature(s) were missing, or explain how it prevented him from reserving a room utilizing the website reservation system. Later, when Plaintiff attempts to rectify this shortcoming in his reply, he only generally

---

[10] "Of course, standing 'must be supported at each stage of the litigation in the same manner as any other essential element of the case,' and what suffices at the Rule 12(b)(6) stage may not suffice at later stages of the proceedings when the facts are tested." *Syed v. M-I*, 853 F.3d 492, n.4 (9th Cir. 2017) (citations omitted).

describes various barriers that affect him when he stays at hotels, such as lack of accessible routes to and from entrances, accessible routes inside facilities, accessible parking, accessible bathing facilities, handrails and support, accessible pools, accessible elevators, wide enough doorways, and accessible service counters. (Doc. No. 14 at 8.) Once again, Plaintiff "does not even attempt to relate the alleged violations to his disability." *Chapman*, 631 F.3d at 955. Accordingly, Plaintiff cannot maintain standing to bring the lawsuit on this bare procedural allegation.

(c) Injunctive Relief

A plaintiff seeking injunctive relief must also show that there is a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 111. In ADA cases, a plaintiff may show a real and immediate threat of injury in two ways: (1) "he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier;" or (2) the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation" which he would otherwise visit in the course of his regular activities. *Chapman*, 631 F.3d at 950. In recognizing the deterrent effect and tester standing doctrines, "the Ninth Circuit did not relax the requirement that the Plaintiff demonstrate real and immediate threat of repeated injury by showing a legitimate intent to visit again the public accommodation in question." *Gastelum*, 2018 WL 2388047, at *6. Demonstrating "past exposure to illegal conduct" alone is not sufficient to demonstrate a present case or controversy; instead, "the plaintiff must allege continuing, present adverse effects stemming from the defendant's action." *CREEC*, 867 F.3d at 1098. For instance, a plaintiff may show continuing adverse effects by showing that a "defendant's failure to comply with the ADA deters [him] from making use of the defendant's facility." *Id*. But, to be deterred from making use of the defendant's facility, one must have a true desire to return to the facility but for the barriers. *See, e.g., D'Lil v. Best Western Encino Lodge & Suites*, 538 F.3d 1031, 1037-38 (9th Cir. 2008).

In determining whether a plaintiff has a future intent to visit the public accommodation at issue, courts consider a series of factors, including: "(1) the proximity

9

of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005). Courts are to make a case-by-case determination, in light of all the evidence. *See CREEC*, 867 F.3d at 1100.

Defendant argues that "Plaintiff fails to demonstrate, concrete plans to stay at the [Defendant's Inn] in the future...." (*See* generally Doc. Nos. 13 and 15.) The Court agrees. Plaintiff has never stayed at the Inn. In fact, he has only visited the Defendant's website. Although Plaintiff likes to travel to San Diego for pleasure, and other times for litigation purposes and hearings, there is insufficient evidence that he actually stays in hotels of the same caliber as Defendant's property for any of those purposes. (Doc. No. 14-1 ¶¶ 16-20.) And, although Plaintiff avows that he wants to visit "Defendant's Hotel" overnight given its reputation as a luxurious and comfortable hotel, he fails to articulate any specific plan to return or explain why he is likely to want to stay at or visit Defendant's hotel in the future with any specific detail. *Id.* Plaintiff's suggestion that he would like to "visit" and "stay overnight" is anything but specific about that time.[11] (Doc. No. 14 at 11.) Absent a showing of specific plans or that he likely would visit Defendant's Inn, Plaintiff has not demonstrated a real and immediate threat of repeated injury. *See Gastelum*, 2018 WL 2388047 at *7. Accordingly, Plaintiff does not have standing to pursue this ADA claim.

///

---

[11] "Plaintiff would like to return to the Website and visit Defendant's Hotel overnight given its reputation as a luxurious and comfortable hotel. He plans to stay overnight at the Hotel with his fiancé and they will be driving the wheelchair accessible van she requires to travel via automobile (she uses a power wheelchair that deploys via ramp from her van). Plaintiff also plans to use his Rollator walker to ambulate when he visits the Hotel, since he has been using it more frequently recently due to worsening stenosis symptoms and corresponding difficulty in mobility." (Doc. No. 14 at 11.)

### 2. *Reservation System*

Plaintiff's also alleges that Defendant's website reservation system reserves accessible rooms differently than non-accessible rooms. Specifically, Plaintiff alleges that "[t]he ... online reservation system prevented me [sic] mak[ing] a reservation for a room designated as 'accessible' (*regardless of inadequate descriptions of how a room is accessible*) because it required an extra step to make a 'special request' before I could make a reservation."[12] (Doc. No. 1-2 ¶ 21(f).) However, he provides little explanation of this purported difference other than asserting that the reservation system requires a *special request* be submitted. As with his other website-related claim, Plaintiff's vague assertion is insufficient. Therefore, the Court finds that it lacks standing over Plaintiff's second ADA allegation as well. Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's ADA claim.

### B. **State Law Claim – Unruh Act**

Defendant also moves for summary judgment on Plaintiff's damages claim under the Unruh Act. (Doc. No. 16 at 8.) Because the Court grants summary judgment on Plaintiff's ADA claim, the only remaining issue is whether the Court may exercise supplemental jurisdiction over the pendent state law claim.

The Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The ADA and state law claims share a common nucleus of operative fact and are "part of the same case or controversy"; both use identical factual allegations and violations of the ADA to constitute violations of the

---

[12] When attempting to make a reservation, Plaintiff found that the Website treated the accessible rooms as a special request and not as a room type that can be reserved as can other rooms with the following special request options: "Handicapped Accessible Room" and "Handicapped Accessible Room w/ Rollin Shower"; however, the information provided lacks specificity and does not provide sufficient detail for Plaintiff to determine whether the Subject Property will meet his accessibility needs.

11

parallel Unruh Act. Nevertheless, once the Court acquires supplemental jurisdiction, it may decline to exercise it if:

> (1) the claim raises a novel or complex issue of state law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995).

Here, the Court granted summary judgment on the ADA claim, the only claim over which it has original jurisdiction. "[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors...will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Thus, the Court declines to exercise supplemental jurisdiction over the state law Unruh Act claim, as it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1); *see, e.g., Oliver*, 654 F.3d at 910 (finding that the district court did not abuse its discretion in dismissing state law claims under the UCRA and CDPA after losing original jurisdiction over ADA claim); *see also Rodgers v. Chevys Restaurants, LLC*, No. C13-03923 HRL, 2015 WL 909763, at *4 (N.D. Cal. Feb. 24, 2015) ("In a Title III ADA action, a district court may properly decline supplemental jurisdiction over related state-law access claims once the ADA claim has been dismissed."). Since the Court is declining supplemental jurisdiction, we are required to **REMAND** the Unruh Act claim back to the Superior Court.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's federal ADA claim. The Court **DECLINES** to retain supplemental jurisdiction over Plaintiff's State law Unruh Act claim and accordingly **REMANDS** this action to the San Diego County Superior Court.

**IT IS SO ORDERED.**

Dated: July __, 2020

Hon. Roger T. Benitez
United States District Judge